**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT ℝ E C E I V E D
**DISTRICT OF NEW JERSEY**

DEC 1 5 2017

AT 8:30_____M
WILLIAM T. WALSH
CLERK

|                              |   |                              |
| ---------------------------- | - | ---------------------------- |
| ERIC ROJO,                   | : |                              |
|                              | : | Civ. Action No. 11-428 (PGS) |
| Petitioner,                  | : |                              |
|                              | : |                              |
| v.                           | : | **OPINION**                  |
|                              | : |                              |
| UNITED STATES OF AMERICA,    | : |                              |
|                              | : |                              |
| Respondent.                  | : |                              |
|                              | : |                              |

**PETER G. SHERIDAN**, District Judge:

This matter comes before the Court on Petitioner Eric Rojo's ("Rojo") Motion Under 28

U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No.

1); Motion for Appointment of Counsel (ECF No. 2); Respondent's Answer (ECF No. 11); Rojo's

Traverse (ECF No. 12); Statement of Disputed Issues of Material Facts (ECF No. 13); and Motion

for Discovery (ECF No. 14). For the reasons discussed below, an evidentiary hearing is

unnecessary, the motions for appointment of counsel and for discovery[1] are denied, and the § 2255

motion is denied.

---

[1] Rojo seeks to depose his counsel, James S. Friedman and Kevin F. Carlucci, regarding his
allegations of ineffective assistance of counsel, and for Respondent to produce admissions records
of Hudson County Correctional Center and Passaic County Correctional Center for January 1,
2006 through July 5, 2006, in order to show that Alberto Valencia Mosquera was arrested and
detained prior to July 5, 2006, that Valencia Mosquera was working undercover for Mr. Marroro
prior to July 5, 2006, and to support Rojo's allegation that Valencia Mosquera set Rojo up to try
to reduce his own sentence exposure. (ECF No. 14.) A district court may, for good cause, authorize
a party to conduct discovery in a proceeding under 28 U.S.C. § 2255. *See* Rule 6, Rules Governing
Section 2255 Proceedings for the United States District Courts. For the reasons discussed in this
Opinion, the Court does not find good cause to permit discovery in this matter because it is unlikely

## I. BACKGROUND

### A.     The Criminal Proceedings

An Indictment was filed against Rojo on October 11, 2007, charging him with conspiracy

to distribute and to possess with intent to distribute 100 grams or more of heroin, in Hudson

County, July 7, 2006, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). *U.S. v. Rojo*, 07cr827

(PGS) (D.N.J. Oct. 11, 2007) (Indictment, ECF No. 16.) A superseding indictment was filed on

March 19, 2008, charging Rojo and Alberto Valencia-Mosquera, a/k/a "Juan David Montes" with

conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin, and

possession with intent to distribute 100 grams or more of heroin. (*Id.*, Superseding Indictment,

ECF No. 27.)

On September 19, 2008, a jury found Rojo guilty on both counts in the Superseding

Indictment. (*Id.*, ECF Nos. 47-50.) On April 24, 2009, this Court sentenced Rojo to a 78-month

term of imprisonment, and a four-year term of supervised release. (*Id.*, Minutes of Proceedings,

ECF No. 60.)

Rojo appealed to the Third Circuit Court of Appeals. (*Id.*, Notice of Appeal, ECF No. 59.)

On appeal, the Third Circuit made the following findings of fact:

> The case grew from the relationship between Rojo and a co-
> conspirator, Alberto Valencia–Mosquera. Though only Rojo is an
> appellant in this case, Respondent originally also charged Valencia–
> Mosquera but he pleaded guilty pursuant to an agreement with
> Respondent and testified as a government witness at Rojo's trial.
> Accordingly, to a large extent the facts that we describe come from
> his testimony.
>
> The evidence showed that Rojo and Valencia–Mosquera, who were
> employed at the same appliance store in New York City, had a social

---

Rojo has not presented specific allegations suggesting that he can demonstrate entitlement to relief
by further development of the facts. *See Bracy v. Gramley*, 520 U.S. 899, 909 (1997) (discovery
under Rule 6 is confided to the discretion of the District Court).

relationship during the course of which Valencia–Mosquera, who was a drug dealer, supplied Rojo cocaine for his use. In June or July 2006 an undercover police detective with the Jersey City, New Jersey, police department solicited Valencia–Mosquera to sell him a kilogram of heroin. Inasmuch as Valencia–Mosquera did not have a driver's license and feared facing difficulties if the police stopped him while he was driving to a meeting with the purchaser, he asked Rojo to drive him to the meeting. According to Valencia–Mosquera, he told Rojo the purpose of the meeting, and, as an inducement to Rojo to drive him told Rojo that he would pay him $1,000 if the transaction was completed. Rojo accepted the offer and drove Valencia–Mosquera to the meeting with the detective which was held at Liberty State Park. Valencia–Mosquera reached an agreement at the meeting with the detective for the sale to him of one kilogram of heroin for $54,000 at a later time.

Valencia–Mosquera subsequently advised Rojo that the sale would be completed two days later and asked Rojo to take time off from work to drive him to the meeting. As Valencia–Mosquera requested, Rojo drove him to the place of the contemplated transaction near the entrance to the Holland Tunnel in New Jersey. But before they went to the tunnel they went to a store where Valencia–Mosquera obtained a child's car seat in which to hide the heroin. Then they went to the tunnel where Valencia–Mosquera met the detective who, after looking at the heroin, signaled for other police to assist in making arrests. Valencia–Mosquera fled and escaped but was apprehended about a year later. The police, however, arrested Rojo on the spot.

Rojo testified at the trial and acknowledged that he had driven Valencia–Mosquera to the two meetings we described above. But he denied having any knowledge of the drug transaction and said that he drove Valencia–Mosquera to the meetings as a courtesy to him. Therefore, there was no real dispute as to what happened. Rather, the case centered on what Rojo knew of Valencia–Mosquera's dealings with the detective.

*U.S. v. Rojo*, 374 F. App'x. 285, 285-87 (3d Cir. 2010).

Rojo raised two issues on direct appeal (1) admission of FRE 404(b) evidence constituted reversible error; and (2) the district court erroneously charged the jury on willful blindness. *Id.* at 285. The Third Circuit affirmed the judgment and conviction. *Id.* at 288.

B.      Motion to Vacate, Set Aside, or Correct Sentence

On January 24, 2011, Rojo filed the present motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. (ECF No. 1.) Rojo raised four claims for relief, alleging multiple instances of ineffective assistance of counsel: 1) "Ineffective Assistance of Counsel During The Trial Process, When Counsel Failed To Bring To The Court's Attention The Fact That The Prosecutor Passed Documents To The Jury That The Court Ruled Should Not Go To The Jury;" 2) "Ineffective Assistance of Counsel During the Pretrial And Trial Process, When Counsel Failed To Use Available Records To Demonstrate That Alberto Valencia Mosquera Was Working For Detective Marroro Prior to July, 2006;" 3) "Ineffective Assistance of Counsel During the Trial Process, When Counsel Failed to Bring To The Jury's Attention The Discrepancy Between The Jersey City Police Report As To the Packages of Narcotics Seized;" 4) "Ineffective Assistance of Counsel Due To The Cumulative Impact Of Multiple Deficiencies Or Errors By Counsel During the Pretrial, Plea, Trial, Sentencing And Direct Appeal Process." (ECF No. 1 at 5-8.)

## II.    STANDARD OF REVIEW

A prisoner in custody pursuant to a federal court judgment and conviction may move the court that imposed the sentence to vacate, set aside or correct the sentence, if the sentence was imposed in violation of the Constitution or laws of the United States; or if the court was without jurisdiction to impose such sentence; or if the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *U.S. v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (quoting *Government of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)).

## III. DISCUSSION

4

A.     Discovery, Evidentiary Hearing and Appointment of Counsel

"The district court is required to hold an evidentiary hearing 'unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.'" *Booth*, 432 F.3d at 545. For the reasons discussed below, the records of the case conclusively show that Rojo is not entitled to relief, and the Court will not hold in evidentiary hearing in this matter. Appointment of counsel is not required unless an evidentiary hearing is held in a § 2255 proceeding. *See U.S. v. Iasiello*, 166 F.3d 212, 213-14 (3d Cir. 1999) (discussing Rule 8 of the Rules Governing § 2255 proceedings). Rojo's discovery request is also denied. *See* supra n. 1.

B.     Standard of Review: Ineffective Assistance of Counsel

An ineffective assistance of counsel claim has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Furthermore, the first prong of the test "requires a defendant to show 'that counsel's representation fell below an objective standard of reasonableness.'" *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (quoting *Strickland*, 466 U.S. at 688)). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of

5

hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (citing *Bell v. Cone*, 535 U.S. 685, 702

(2002); *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986); *Strickland*, 466 U.S. at 689; *United

States v. Cronic*, 466 U.S. 648, 656 (1984)).

The second prong of the *Strickland* test, prejudice, requires a defendant to "show that there

is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is one

'sufficient to undermine confidence in the outcome.'" *Collins v. Sec. of Pennsylvania Dept. of

Corr.*, 742 F.3d 528, 547 (3d Cir. 2014) (quoting *Strickland*, 466 U.S. at 694).

The "ultimate focus" of the prejudice inquiry is on the fundamental fairness of the

proceeding. *Strickland*, 466 U.S. at 696. "Prejudice is viewed in light of the totality of the evidence

at trial and the testimony at the collateral review hearing." *Collins*, 742 F.3d at 547 (citing *Rolan

v. Vaughn*, 445 F.3d 671, 682 (3d. Cir. 2006)). A court need not address both components of the

ineffective assistance inquiry. *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an

ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be

followed." *Id.*

C.    Analysis

1.    Ground One

In his first ground for relief, Rojo alleged his counsel was ineffective for failing to bring to

the Court's attention "the fact that the prosecutor passed documents to the jury that the court had

ruled should not go to the jury." (ECF No. 1 at 14, ¶33.) In support of this ground for relief, Rojo

alleges:

> At the end of the trial, the jury requested a copy of a police report
> and testimony of Officer Greene and Officer Marroro but AUSA
> Beck said that the reports were not in evidence and should not go
> back with the jury. Attorney Carlucci agreed and said that testimony

> could be read back to jury if they wanted. The Court specifically
> ordered that the materials was NOT to go back with the jury.
> (Transcript 9-19-08, page 40.)
>
> In spite of the ruling by the Court and the concurrence by the AUSA,
> the AUSA handed some documents to a juror which appeared to be
> the police reports. This was not mentioned in the transcripts and
> was contrary to the ruling by the Court. (Appendix, Exhibits I)
> (Appendix, Exhibits J).

(*Id.* at 13, ¶¶20-21.)   Rojo alleged he was prejudiced by his counsel's failure to bring this incident

to this Court's attention and to make a motion for a new trial. (ECF No. 1 at 15, ¶¶ 34-38.) Rojo

submitted affidavits from his mother and wife, each stating they saw the AUSA hand documents

to a juror after the Court ruled the reports could not go to the jury. (ECF No. 1-3 at 94-9)).

In response to Ground One, Respondent stated that on September 19, 2008, the jury

submitted a note asking for copies of certain reports. (ECF No. 11 at 5; Jury note, Ex. 2, ECF No.

11-1 at 2.) Counsel for both parties agreed the reports could not go to the jury because they were

not in evidence, and the Court ruled the reports could not go to the jury. (ECF No. 11 at 5.) AUSA

Matthew E. Beck denied handing the reports to a juror. (*Id.* at 6.) Beck added that AUSA Dennis

Carletta, who was co-counsel for the Government during Rojo's trial, authorized Beck to represent

that he also denies Rojo's allegation. (*Id.*) Respondent contends that if this incident had taken

place as Rojo alleges, there were others who would have witnessed it and alerted the Court,

including the Deputy Clerk, court reporter, and a court security officer. (*Id.*) Respondent also

asserts that after the Court instructed the jury that it could not have the reports, it is likely a juror

would have brought it to the Court's attention that it was provided with the reports. (*Id.*)

Respondent notes Rojo did not raise this issue at sentencing or on direct appeal. (*Id.* at 7.)

In his traverse, Rojo argues the Court should accept his affidavits in support of Ground One because "the government attorney has provided no affidavit in opposition to the allegations." (ECF No. 12 at 14.) Additionally, Rojo "swore" in his traverse:

> 3.) In spite of the ruling by the Court and the concurrence by the AUSA, the AUSA handed some documents to a juror which appeared to be the police reports. This was not mentioned in the transcripts and was contrary to the ruling by the Court.
>
> 4.) I was positioned next to Attorney Carlucci [defense counsel] at the time of the foregoing event. It was clear that he had also seen the transfer of the documents to the juror. He stated something to me like, "I do not know why the prosecutor did that."
>
> 5.) I understood that this issue was going to be raised on appeal so I just waited for my attorneys to raise it. Moreover, I was represented by counsel so I don't know how I could have made an "objection" to the Court or raised the issue.

(ECF No. 12 at 14.)

An evidentiary hearing is unnecessary on this ground for relief because it is frivolous on the basis of the existing record. "In considering a motion to vacate a defendant's sentence, 'the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.'" *U.S. v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (quoting *Government of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)). The court must hold an evidentiary hearing "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." *Id.*

This Court would have discovered if the reports that it ruled could not go to the jury were in fact provided to the jury. First, this Court solemnly instructs all juries to report any concerns to court staff, and jurors have demonstrated time and again their willingness to do so, and yet no juror came forward about receiving the reports the Court had just ruled they could not have. Second, even if documents the Court ruled could not go to the jury were handed to a juror, and the juror

8

did not report it, court staff collects all materials provided to the jury during deliberations at the conclusion of trial. Staff would have discovered the materials then. Finally, the prosecutor, as an officer of the Court, has represented that neither himself nor his co-counsel gave the reports to the jury. Rojo and his wife and mother have declared only that they saw the prosecutor hand something that looked like the police reports to the jury. Based on the existing record, the Court finds frivolous the allegation that the prosecutor(s) handed to a juror the reports that this Court ruled could not be provided to the jury during deliberations. Ground One of the motion is denied without need for an evidentiary hearing or discovery.

2.    Ground Two

In Ground Two, Rojo argues counsel was ineffective by failing to use available phone records to show that Alberto Valencia Mosquera was working for Detective Marroro prior to July 2006. (ECF No. 1 at 6.) In support of this claim, Rojo explains that the charges against him arose from a seizure of heroin hidden inside a child's seat in a vehicle that Rojo was driving on July 7, 2006. (*Id.* at 10, ¶4.) Rojo further alleges in the following paragraphs of his § 2255 motion:

> 14.) At trial, Government Witness Marroro testified that Restrepo was his undercover cooperating individual. Mr. Marroro testified that this phone communications with Alberto Valencia Mosquera started a week or so before the July 5, 2006 meeting. (Transcript 9-17-08, pages 138-129)
>
> 15.) In fact, phone records show that Alberto Valencia Mosquera and Mr. Marroro were communicating well before the time frame for which Mr. Marroro testified. (Appendix, Exhibits E-H)
>
> 16.) The extensive communications between Mr. Marroro and Alberto Valencia Mosquera demonstrate that Alberto Valencia Mosquera was working undercover for Mr. Marroro early on and outside the time frame testified to by Mr. Marroro. (Appendix, Exhibits E-H)
>
> 17.) The extensive communications between Mr. Marroro and Alberto Valencia Mosquera demonstrate that Mr. Marroro and

Alberto Valencia Mosquera both committed perjury at trial. (Appendix, Exhibits E-H)

18.) The extensive communications between Mr. Marroro and Alberto Valencia Mosquera demonstrate that, in fact, Mr. Marroro and Alberto Valencia Mosquera "set up" Mr. Rojo and Mr. Rojo in fact did not know anything about the drugs in this case and had nothing what-so-ever to do with the drugs or drug business. ((Appendix, Exhibits E-H)

19.) While the phone records demonstrating the foregoing (Appendix, Exhibits E-H) were available to counsel for cross-examination of Mr. Marroro and Alberto Valencia Mosquera, counsel did not use the records to impeach them and demonstrate to the jury that they were committing perjury.

In response, Respondent argued that the phone records were not material to the defense. (ECF No. 11 at 8.) It was undisputed that a heroin transaction occurred on July 7, 2006, and that Rojo drove Valencia-Mosquera to the transaction. (*Id.*) The only question was whether Rojo knowingly and intentionally participated in the drug transaction, and the phone records do not shed light on that issue. (*Id.*) Rojo did not further address this ground for relief in his Traverse or Statement of Disputed Material facts. (ECF Nos. 12, 13.)

The phone records indicate there were calls between Alberto Valencia Mosquera and Mr. Marroro beginning June 6, 2006. (ECF No. 11-1 at 45-53.) Rojo asserts Marroro testified that the calls started "a week or so" before the July 5, 2006 meeting. (ECF No. 1 at 11, ¶14.) It is difficult to imagine what it would have accomplished for defense counsel to show that the calls started about a month, rather than "a week or so" before the July 5, 2006 drug transaction.

Rojo's defense was that although he was the driver to the July 5, 2006 drug transaction, he did not know about the drugs. *U.S. v. Rojo*, 375 F. App'x at 286-87 ("there was no real dispute as to what happened. Rather, the case centered on what Rojo knew of Valencia-Mosquera's dealings with the detective.") The fact that the phone calls between Mosquera and Marroro began on June

6, 2006 does not support the defense. Rojo has not met his burden to show counsel was ineffective for failing to cross-examine Marroro abut the phone records. *See Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996) (even if the record does not establish that counsel made an informed strategic decision, the petitioner must come forward with evidence to the contrary sufficiently probative to overcome the "strong presumption" required by *Strickland*.) An evidentiary hearing on this issue is unnecessary, and Ground Two of the motion is denied.

### 3.  Ground Three

For Rojo's third ground for relief, he alleges his counsel was ineffective for failing to "bring to the jury's attention the discrepancy between the Jersey City police report and the federal report as to the packages and packaging of narcotics seized." (ECF No. 1 at 14, ¶48.) In further support of this claim, Rojo alleges that Valencia Mosquera testified at trial that there were four cylinders of drugs seized, and all four cylinders were wrapped in green plastic. (*Id.*, at 11, ¶11, citing Transcript 9-17-08, pages 55-57.) The Jersey City Police Report, however, showed there were three cylinders wrapped in green plastic and one wrapped in clear plastic. (*Id.*, ¶12.)

Respondent suggests that Rojo has simply misread the Jersey City Police Department Report. (ECF No. 11 at 9.) The report states that the following were placed in evidence: "3 green plastic wrap disk," "1 clear plastic wrap disk," and "1 green plastic wrap." (ECF No. 11-1 at 55.) Respondent asserts that one of the disks of heroin had to be opened to test the substance, therefore, the green plastic wrap was removed and logged into evidence separately. (ECF No. 11 at 9.)

Respondent's explanation is very persuasive. If defense counsel had raised this issue before the jury, the jury may have concluded that the defense was desperate to create doubt where none existed. It would have been a reasonable strategic decision by defense counsel not to raise

this issue. Therefore, Rojo has not met the *Strickland* standard for relief on Ground Three of his motion.

### 4. Ground Four

For his fourth ground for relief, Rojo alleges the cumulative errors of his counsel at all stages of litigation amounted to ineffective assistance of counsel. (ECF No. 1 at 8.) Rojo alleged the following in support of Ground Four:

> Counsel unprofessionally failed to timely, properly, and effectively move for suppression of evidence material to the conviction and/or sentence of Mr. Rojo and counsel could have but did not timely move for dismissal of the indictment. But for counsel's unprofessional error, there is a reasonable probability that the outcome of the proceeding would have been different.
>
> Counsel unprofessionally failed to investigate or present available, material exculpatory evidence and testimony at trial and failed to timely object to the unlawful admission of evidence by the prosecution. But for counsel's unprofessional error, there is a reasonable probability that the outcome of the proceeding would have been different.
>
> Counsel unprofessionally failed to timely request appropriate jury instructions and to timely object to insufficient instructions. In final argument, counsel unprofessionally also failed to timely object to improper argument by the prosecution and/or to timely ask for curative instructions for the improper argument. But for counsel's unprofessional error, there is a reasonable probability that the outcome of the proceeding would have been different.
>
> Counsel unprofessionally failed to investigate or present available evidence and legal authority material to the sentencing of Mr. Rojo. Counsel also unprofessionally failed to object to, unlawful, false and unreliable evidence used to determine Mr. Rojo's guideline sentencing range and ultimate sentence. But for counsel's unprofessional error, there is a reasonable probability that the outcome of the proceeding would have been different.
>
> Mr. Rojo was prejudiced by the objectively unreasonable performance of counsel during the sentencing process, when counsel unprofessionally failed to move for appropriate downward

12

departure or a downward variance under 18 U.S.C. § 3553(a)[2] in Mr. Rojo's case. But for counsel's unprofessional error, there is a reasonable probability that the outcome of the proceeding would have been different.

Counsel unprofessionally failed to investigate or present the strongest issues available to Mr. Rojo for his direct appeal. But for counsel's unprofessional error, there is a reasonable probability that the outcome of the proceeding would have been different.

Mr. Rojo's counsel labored under an actual conflict of interest which adversely affected their performance during the pretrial, plea, trial, sentencing and direct appeal process in this case. Counsel owed a "duty" other than to Mr. Rojo. This duty was in conflict with the duty owed to Mr. Rojo. Counsel chose between the duties. This choice adversely affected the performance of counsel during the pretrial, plea, trial, sentencing and direct appeal process.

(ECF No. 1 at 17-19, ¶¶54-55, 57-61.) Rojo did not elaborate on these claims in his Memorandum in Support of Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 (ECF No. 1-3) or his Traverse (ECF No. 12) or his Statement of Disputed Issues of Material Facts (ECF No. 13.) Respondent asserts that because Rojo failed to discuss or substantiate any of the allegations, Ground Four should be summarily dismissed. (ECF No. 11 at 10 n.4.)

Not one of the allegations in Ground Four is more than a bare allegation and legal conclusion. For example, Rojo alleges his counsel failed to move to suppress evidence material to the conviction or sentence, but he does not say what evidence should have been suppressed or the basis for suppressing it. Similarly, he alleges counsel failed to present exculpatory evidence, but he does not identify the evidence, nor does he identify jury instructions that should have been given, nor specific arguments that should have been raised at sentencing. Finally, Rojo alleges counsel labored under an actual conflict of interest, but he gives no indication of the substance of

---

[2] 18 U.S.C. § 3553(a) identifies seven factors to be considered in imposing a sentence, but Rojo did not describe which factor his counsel failed to address in support of a downward departure.

the conflict of interest. Where the grounds in the petition allege insufficient facts to entitle the petitioner to relief, the petition may be summarily dismissed. *See U.S. v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000) (citing Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts). Therefore, the Court dismisses Ground Four of the motion.

D. <u>Certificate of Appealability</u>

The Court must assess whether a certificate of appealability should issue. A litigant may not appeal from a final order in a proceeding under 28 U.S.C. § 2255 without a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability shall not issue unless there is a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing requiring to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Based on the discussion above, reasonable jurists would not find it debatable that defense counsel provided ineffective assistance of counsel that prejudiced the defense.

IV. CONCLUSION

For the foregoing reasons, the motion to vacate, set aside, or correct the sentence (ECF No. 1) is DENIED, and the Court SHALL NOT ISSUE a certificate of appealability. An appropriate Order shall follow.

Dated: _Dec 15,_____, 2017

_Peter G. Sheridan_
**PETER G. SHERIDAN**
**United States District Judge**